RECEIVED
IN ALEXANDRIA, LA.
NOV - 9 2012
TONY R. MOORE, CLERK
BY_____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL DOCKET NO. 10-354 |
| -vs- | JUDGE DRELL |
| JEAN PAUL STROUD | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court are several pending defense motions. A Motion to Supress [sic] Evidence and Dismiss Charge (Doc. 59) was filed by Defendant's second attorney, A. Scott Killen. The second Motion to Dismiss and/or Exclude Evidence (Doc. 70) was filed by Defendant's third attorney, Billy J. Guin, Jr. Defendant's fourth attorney, Wayne Blanchard, filed a Motion for Pretrial Determination on Admissibility of Predicate Conviction (Doc. 155). These three motions concern the validity of the predicate conviction underlying Count 1 of the Indictment in this case. For the following reasons, the Motion to Supress [sic] Evidence and Dismiss Charge (Doc. 59) will be **GRANTED**; the Motion to Dismiss and/or Exclude Evidence (Doc. 70) will be considered **MOOT**; and the Motion for Pretrial Determination on Admissibility of Predicate Conviction (Doc. 155) will likewise be considered **MOOT**.

I. <u>Factual and Procedural Background</u>

On November 18, 2010 Defendant was charged by Indictment (Doc. 1) with violating 18 U.S.C. § 922(g)(9), prohibited person in possession of firearms, and 26 U.S.C. § 5861(d), possession of unregistered firearm. Specifically, Count 1 alleges that "on or about March 4, 2010, in the Western District of Louisiana, the defendant, Jean Paul Stroud, having previously been convicted in 2002 of the misdemeanor crime of Domestic Violence, 3rd Degree, in the Municipal Court of Vestavia Hills, Alabama, did knowing possess, in and affecting commerce, firearms . . ." (Doc. 1) and includes a list of thirteen firearms Defendant allegedly possessed. Defendant pled guilty to the underlying misdemeanor charge on December 17, 2002. The present motions challenge the validity of the predicate conviction and argue Defendant's guilty plea was not made "knowingly and intelligently" as required by Fed. R. Crim. Proc. 11 and controlling jurisprudence.[1] After careful consideration of the parties' arguments in briefs and presented at a motion hearing on November 6, 2012, we make this ruling.

---

[1] Mr. Blanchard well summarizes: "Although each of these motions (Docs. 59 and 70) sought a variety of relief, including dismissal of the indictment, each nonetheless attacks the validity of the predicate conviction on the grounds that the guilty plea was not knowing and voluntary." (Doc. 155-1 at p. 1).

2

II. <u>Law and Analysis</u>

    A. *Propriety of Pretrial Determination as a Matter of Law*

The Fifth Circuit in <u>U.S. v. Bethurum</u>, 343 F. 3d 712, 717 (5th Cir. 2003) concluded a trial judge "erred in ruling that the burden fell on the government to prove to the jury, beyond a reasonable doubt, that [defendant] had knowingly and intelligently waived his rights at the time of his prior domestic violence conviction." <u>Id.</u> Further, the appellate court found "the question of the effectiveness of the waivers [made in his underlying guilty plea] should have been determined as a matter of law by the trial judge pursuant to Rule 104." <u>Id.</u> Accordingly, it is appropriate for the Court to determine the issue prior to trial.

Further, the Fifth Circuit has determined "the defendant bears the burden of rebutting the presumption that the defendant validly waived his right to counsel when collaterally attacking a previous conviction." <u>U.S. v. Guerrero-Robledo</u>, 565 F.3d 940, 945 (5th Cir. 2009) (citations omitted).

    B. *Validity of Guilty Plea to Crime of Domestic Violence*

At the hearing on November 6, 2012, the Court heard live video-conferenced testimony from the Vestavia Hills Municipal Court Judge Tommy Spina ("Judge Spina") and prosecutor James Sturdivant ("Mr. Sturdivant") who served in their respective positions when Mr. Stroud pled guilty to the underlying offense. Both men were candid with the Court and acknowledged

3

they could not independently recall the details of Mr. Stroud's 2002 guilty plea. Judge Spina testified it was his practice at the time to inform multiple defendants of their rights at the beginning of a given court session and then to question individual defendants as to their particular plea agreements. However, the documents introduced at the motion hearing (Exhibits 1–7) and Mr. Stroud's testimony indicated Mr. Stroud was incarcerated prior to being brought before the municipal court judge.[2] Judge Spina testified incarcerated individuals were brought in <u>after</u> the regular court docket and would not have been present to hear the rights explained to the others at the beginning of the court session. At least he could not in any way verify, even circumstantially, that <u>he</u> advised Mr. Stroud of these rights.

Mr. Sturdivant testified he as the prosecutor took great care to explain the plea agreement and waiver of rights to defendants in his court. He explained his prior and present experience as counsel in federal criminal proceedings and emphasized the importance in his own mind of a defendant's guilty plea being voluntary and intelligent. Although he did not recall Mr. Stroud individually nor his plea proceeding, Mr. Sturdivant explained he would not have presented a plea agreement to the judge without first making sure, as

---

[2] The exhibits do not identify the exact dates of Mr. Stroud's five day incarceration in Vestavia Hills, but Mr. Stroud testified he was incarcerated from the time of his arrest on December 12, 2002 up until he appeared before Judge Spina on December 17, 2002. The Case Action Summary Sheet (Exhibit 3) dated December 17, 2002 does indicate a five day credit for time served.

best he could, that the defendant understood the agreement and the consequences of a guilty plea.

The Fifth Circuit <u>Bethurum</u> case dictates our decision in the present matter. In <u>Bethurum</u>, the defendant was charged with possessing a firearm after conviction for misdemeanor domestic violence. Similarly to the present case, the <u>Bethurum</u> defendant also pled guilty to the underlying misdemeanor offense. <u>Bethurum</u>, 343 F.3d at 713–14 describes how the defendant signed a "Waiver of Appointment of Attorney and Waiver of Jury Trial by Defendant Entering Plea of Guilty" which described the right to counsel and trial by jury. The adjudicating judge on the underlying offense, Judge Adcock, testified "that he routinely would advise the defendant that a conviction in some circumstances could have collateral consequences down the line, such as losing the right to vote." <u>Id.</u> at 715. However, Judge Adcock added "that he doubted that he specifically warned [defendant] that conviction on the domestic relations misdemeanor would affect his rights concerning firearms use and possession, remarking that 'there's no way that I can go over all of the ramifications of a plea of guilty.'" <u>Id.</u> at 715. In addition, a "former district attorney assigned to Judge Adcock's court [although not the one assigned to defendant's case] corroborated the judge's testimony as to the court's routine procedures." <u>Id.</u>

In finding the defendant knowingly and intelligently waived his rights to counsel and trial by jury at the time of his misdemeanor domestic violence conviction, the Fifth Circuit reasoned:

> Judge Adcock's routine procedures–which include having the defendant sign the detailed waiver form, thoroughly explaining that form to each defendant, and specifically warning the defendant about the advantages of being represented by counsel–adequately ensure that a defendant's waiver of his rights is both knowing and intelligent.

Bethurum, 343 F.3d at 717–18 (citing U.S. v. Davis, 269 F.3d 514, 518–19 (5th Cir. 2001) (stating that, while there is "no sacrosanct litany for warning defendants against waiving" their rights, the presiding judge must make the defendant aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'")(quoting Faretta v. California, 422 U.S. 806, 832 (1975))).

We realize the issue of the prosecutor's explanation of a waiver of rights was not before the Fifth Circuit in Bethurum, but the language from our controlling appellate court is clear: the presiding judge must make a defendant aware of the dangers and disadvantages of self-representation. It is equally clear such explanation need not occur individually, but it appears the responsibility remains with the court, not the prosecutor. The facts elicited in the present case were that Judge Spina gave rights advice in general at the beginning of court, but those individuals incarcerated were brought in after such advice.

6

All evidence in this case, including the testimony of the prosecutor, indicates to the Court the rights advice and the executed understanding and waiver by Mr. Stroud were probably adequate under the totality of circumstances. Nevertheless, we do not believe we can deviate from direct Fifth Circuit language which requires that the court's involvement be clear and consistent at the time of the underlying plea. As it is the Court's duty to make this legal determination, we must find, under existing Fifth Circuit precedent, that rights advice by the prosecutor, standing alone, is inadequate. As a matter of law, we therefore cannot say Mr. Stroud's 2002 guilty plea to a misdemeanor crime of domestic violence was made knowingly and intelligently. Because it is the lynchpin for the prosecution of Count 1 in this Indictment, Count 1 must fall in its entirety.

III. Conclusion

Accordingly, Defendant's motion to dismiss (Doc. 59) will be **GRANTED**. The underlying conviction forming the basis for Count 1 of the Indictment will not be allowed and Count 1 will be **DISMISSED**. Because the later motions (Docs. 70 and 155) request the same relief, these motions will be considered **MOOT**. Disposition will enter by a separate order signed on this date.

SIGNED on this 9 day of November, 2012, at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT